UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **HOWARD WRIGHT III,**<br><br>Plaintiff,<br><br>v.<br><br>**FOOTLOCKER, INC., and BOB CHALFANT,**<br><br>Defendants. | Civ. No. 16-2522 (KM) (MAH)<br><br>**MEMORANDUM OPINION** |

## KEVIN MCNULTY, U.S.D.J.:

Plaintiff Howard Wright III ("Wright") brought this action against his former employer, Foot Locker Retail, Inc.[1] ("Foot Locker"), and Foot Locker district manager Bob Chalfant (collectively, "Defendants"), based on alleged employment discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*

Now before the Court is Defendants' motion (ECF no. 12)[2] to dismiss the Complaint for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons stated below, I will dismiss Wright's complaint without prejudice to the submission of a proposed amended complaint within 30 days.

---

[1] Wright mistakenly designated the corporate defendant as "Footlocker, Inc."

[2] Record items cited repeatedly will be abbreviated as follows

"Compl." = Complaint (ECF no. 1-1)

"Pl. Opp." = Plaintiff's Letter in Opposition (ECF no. 17)

1

## I. BACKGROUND

According to the Complaint, Wright was employed by Foot Locker for eight years from January 8, 2008 through February 27, 2016. (Compl. 6)[3] Wright was a fulltime associate during his first year of employment, and was an assistant manager for the remaining seven years. (*Id.*) The Complaint alleges that Wright was "discriminated against and denied promotion" despite an excellent employment record. (*Id.*)

In April and May 2013, Wright was transferred from the Willowbrook Foot Locker store[4] to temporarily manage the Foot Locker store in Irvington, New Jersey. (*Id.* at 7) Wright asked district manager Bob Chalfant to promote him to permanent store manager at that location. (*Id.*) However, Ramon Acevedo was instead promoted to the permanent manager position, and Wright became the assistant manager. (*Id.*) "To date," Wright is "the only assistant manager out of the bunch [he] started with that has not been promoted to my own store as a manager." (*Id.*)

In February 2014, there was an incident of gun violence at the Irvington Foot Locker. (*Id.*) Chalfant let Wright and his fellow assistant manager, Rodderick Garett, know that they "would be recognized and compensated for [their] bravery" and manner in which they "handled the situation." (*Id.*) However, "nothing has happened in reference to the store shooting . . . and it has been like the whole situation was swept under the rug." (*Id.*) Acevedo, Garett, and Wright all requested to be transferred to different locations out of concern for their safety. (*Id.*) Acevedo and Garett were both transferred in April 2014, but Wright was not. (*Id.*)

---

[3] Wright's Complaint consists of a five-page form complaint, an EEOC Notice of Dismissal and Right to Sue, and documents titled "Howard Wright 3rd – Damages.docx" and "Howard Wright 3rd – Statement of Events.docx." For ease of reference, all citations to the Complaint will use the page number of the collected documents as designated in ECF no. 1-1.

[4] Presumably, this refers to a Foot Locker Store in Willowbrook Mall located in Wayne, NJ.

In July 2014, Wright was transferred to a Foot Locker store in Paterson, NJ, and his pay was reduced. Wright voiced his objection to that placement, but Chalfant reassured him that the placement would not last more than two to three months. (*Id.* at 8) The Paterson Foot Locker store was in violation of certain city codes, and Wright "filed a complaint with the board of health and other proper agencies." (*Id.*) The bathroom had been unusable "due to lead, asbestos and mold." (*Id.*) As a result of Wright's complaint, "the city made [the store] clean everything up and build a new bathroom with running water." (*Id.*) However, after this incident, Wright noticed that many assistant managers with less experience than him were being promoted while Wright was passed over. (*Id.*)

In December 2014, Wright filed a complaint with the human resources department regarding his having been denied and passed over for promotions. (*Id.*) Although he was told that his complaint would be investigated, it was not until February 2015—after Wright had filed with the Equal Employment Opportunity Commission ("EEOC")—that Chalfant telephoned Wright to say that "he was going to give [Wright] a fair chance," and that Wright should "just email him where [Wright] wanted to be relocated to." (*Id.*) In early March 2015, Wright wrote an e-mail message to Chalfant stating that he wished to be placed at the Willowbrook Foot Locker. (*Id.*) Wright was told that he would be relocated "after All Star Weekend." (*Id.*) In April 2015, Wright still had not been transferred out of the Paterson store, and doubted that he would ever be promoted at Foot Locker. (*Id.*) He therefore decided to go to school part-time for a Commercial Driver's License ("CDL"). (*Id.*) Wright's manager at the Paterson store, Ernesto Aquino, approved a work schedule that accommodated Wright's CDL school schedule. (*Id.*)

After four or five months of this arrangement, Chalfant inquired about Wright's modified schedule and informed Wright that "because [he] wasn't working [the] 35 hour[] minimum," Wright had to "either demote [him]self or change [his] school schedule." (*Id.*) Chalfant declined Wright's request that

3

Chalfant put the demand in writing, and informed Wright that he had only until the end of the day to decide. (*Id.* at 9) That same day, another Foot Locker employee was transferred to the Paterson store in order to accommodate that employee's attendance at Paterson Community College. (*Id.*) Wright felt discriminated against that this employee had been accommodated, but Wright had not. (*Id.*) Later, around September 2015, Wright "suffered an anxiety attack from the constant pressure," and took medical leave after seeking psychiatric help. (*Id.* at 8–9)

In or around September 2015, Wright filed a second EEOC complaint and received his Notice of Dismissal and Right to Sue in February 2016. (*Id.* at 9–10)

## II. DISCUSSION

### A. Standard of Review

Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if it fails to state a claim upon which relief can be granted. The defendant, as the moving party, bears the burden of showing that no claim has been stated. *Animal Science Products, Inc. v. China Minmetals Corp.*, 654 F.3d 462, 469 n. 9 (3d Cir. 2011). For the purposes of a motion to dismiss, the facts alleged in the complaint are accepted as true and all reasonable inferences are drawn in favor of the plaintiff. *New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of New Jersey*, 760 F.3d 297, 302 (3d Cir. 2014).

Federal Rule of Procedure 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Id.* at 570; *see also West Run Student Housing Assocs., LLC v. Huntington Nat. Bank*, 712 F.3d 165, 169 (3d Cir. 2013). That facial-plausibility standard is met

4

"when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Iqbal*, 556 U.S. at 678.

Where a plaintiff is proceeding *pro se*, the complaint is "to be liberally construed," and, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). Nevertheless, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013). "While a litigant's pro se status requires a court to construe the allegations in the complaint liberally, a litigant is not absolved from complying with *Twombly* and the federal pleading requirements merely because s/he proceeds pro se." *Thakar v. Tan*, 372 F. App'x 325, 328 (3d Cir. 2010) (citation omitted).

### B. Analysis

#### 1. Title VII

The only cause of action identified by Wright in his complaint is Title VII. (*See* Civil Cover Sheet, ECF no. 1-3) (Cause of Action listed as: "Title VII of the Civil Rights Act of 1964, Discrimination, character discrim[ination], Retaliation.") Defendants contend that Wright has failed to state a claim for a Title VII violation. I agree.

Title VII of the Civil Rights Act of 1964 prohibits, among other things, discrimination based on race, color, religion, sex, or national origin in the workplace. 42 U.S.C. § 2000e-2(a) *et seq.*; *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 119 (3d Cir. 2013). To establish a claim of disparate treatment under Title VII, a plaintiff must show that he (1) is a member of a protected class; (2) was qualified for the position; and (3) suffered an adverse employment action (4) under circumstances that give rise to an inference of intentional discrimination. *Makky v. Chertoff*, 541 F.3d 205, 214

5

(3d Cir. 2008).[5] To establish a *prima facie* case of retaliation under Title VII, a plaintiff must demonstrate: (1) the plaintiff engaged in activity protected by Title VII; (2) the employer took an adverse employment action against him; and (3) there was a causal connection between his participation in the protected activity and the adverse employment action. *Moore v. City of Philadelphia*, 461 F.3d 331, 340–41 (3d Cir. 2006) (applying *McDonnell Douglas* framework in retaliation case).

As to the first element of a *prima facie* case, there are two classes of "protected activity": (a) participation (which includes formal charges, testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII) and (b) opposition (encompassing informal grievance procedures, informal protests, and making complaints to management about acts unlawful under Title VII). *See Moore*, 461 F.3d at 341, 343; *Curay-Cramer v. Ursuline Academy of Wilmington, Delaware, Inc.*, 450 F.3d 130, 135 (3d Cir. 2006). An actual Title VII violation need not be proven, but the employee plaintiff must have had an "objectively reasonable belief" that the challenged practice of the employer was unlawful under Title VII. *Moore*, 461 F.3d at 341 (citing *Clark County v. Breeden*, 532 U.S. 268, 271 (2001) (per curiam)). The opposition to discrimination must have been clear, not equivocal. *Id.*

Here, however, Wright has not alleged that he was subject to discrimination on the basis of his membership in a protected class. Wright

---

[5] The Title VII claim must be dismissed against defendant Bob Chalfant in any case. The Third Circuit has long held that Title VII liability attaches to employers, not to individual supervisory employees. For example, in *Emerson v. Thiel College*, 296 F.3d 184 (3d Cir. 2002), a former student brought suit under Title VII against a college, its president, its vice president of academic affairs, and members of the faculty and staff. The Third Circuit upheld dismissal of the claim against the individual defendants because "individual employees are not liable under Title VII." *Id.* at 190. *See also Dici v. Com. of Pa.*, 91 F.3d 542, 552 (3d Cir. 1996) ("individual employees cannot be held liable under Title VII"); *Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061, 1078 (3d Cir. 1996) ("we are persuaded that Congress did not intend to hold individual employees liable under Title VII").

does not clearly allege that a protected characteristic played any role in the fact that another employee, Anderson, received a scheduling accommodation to attend Paterson Community College but Wright's school-related accommodation was revoked. He does reference Anderson's ethnicity, but the implication is not clear from the context: "I asked Anderson who was also Hispanic why he was moved from Irvington to the Paterson store . . . ." (Compl. 9) Wright does not identify his own ethnicity, and so it is unclear to whom he was comparing Anderson's ethnicity. Either way, Wright does not clearly allege that the disparate treatment was due to his ethnicity, or any other protected characteristic.

Neither has Wright alleged that he suffered retaliation for engaging in activity protected by Title VII. Instead of retaliation based on activity protected under Title VII, Wright's Complaint suggests that he was passed over for promotions in retaliation for filing a complaint about city code violations in the Paterson Foot Locker store.

In his opposition brief, in which he had the opportunity to clarify the nature of the alleged discrimination, Wright states, "I believe Mr. Chalfant has been discriminating against me based on my personal history, as well as retaliation for the workers comp. suit and me being verbal about the safety of myself and co workers." (Pl. Opp. 8) Even if Wright had clearly made this allegation in his Complaint, it would not state a claim for a Title VII discrimination or retaliation claim.

Accordingly, Wright's Title VII claim must be dismissed.

### 2. Dismissal Without Prejudice

Particularly in a *pro se* employment discrimination case, where a complaint is dismissed on Rule 12(b)(6) grounds, "a District Court must permit a curative amendment, unless an amendment would be inequitable or futile." *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004) (emphasis added). *Accord Phillips v. Cty. of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008) (citing *Grayson v.*

7

*Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002) (citing *Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000)).

This dismissal is therefore without prejudice. Within 30 days, Mr. Wright may submit a proposed amended complaint that remedies the deficiencies of his Title VII claim or asserts another claim or claims.

### III. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the Complaint for failure to state a claim is GRANTED, and the Complaint is DISMISSED in its entirety, without prejudice to the filing of a proposed amended complaint within 30 days.

An appropriate Order follows.

Dated: July 26, 2017

_____
HON. KEVIN MCNULTY, U.S.D.J.